478 A.2d 807

**Maria Bianco BALDINO and Raymond Baldino, Appellees,**

v.

**Armand CASTAGNA, M.D., Ciba-Geigy Corporation and Morris Park Pharmacy, Appellants.**

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided June 29, 1984.

Frank J. Eisenhart, Jr., F. Hastings Griffin, Jr., Philadelphia, John B. Higgins, New York City, pro-hac-vice, for appellant.

Tom P. Monteverde, Philadelphia, for Baldino.

Daniel T. McWilliams, Philadelphia, for Castagna.

## OPINION

McDERMOTT, Justice.

This appeal is from an Order of the Superior Court, 308 Pa.Super. 506, 454 A.2d 1012, reversing the Court of Common Pleas of Philadelphia, which had denied the motion for a new trial of the plaintiffs, appellees herein. We reverse.

Plaintiffs initiated this negligence action in May, 1975, against Armand Castagna, M.D., and CIBA–GEIGY Corporation. On January 16, 1976, Dr. Castagna joined Morris Park Pharmacy as an additional defendant. After a three week jury trial the jury returned a verdict against Dr. Castagna,[1] and in favor of Morris Park Pharmacy and CIBA–GEIGY.[2]

On January 8, 1981, plaintiffs filed a motion for a new trial as to CIBA–GEIGY, contending that the jury verdict was against the weight of the evidence. Dr. Castagna joined in this motion and also filed a separate motion for new trial as to the verdict against him, contending that it too was against the weight of the evidence.

By Order of October 8, 1981, the trial court denied all of the above post-trial motions, and on November 5, 1981, judgment was entered on the verdicts. Plaintiffs filed a Notice of Appeal with the Superior Court on November 15, 1981. That court reversed the judgment of the trial court and remanded the case for a new trial (Opinion of Cirillo, J., with Johnson, J. concurring in the result). A petition for reargument was denied by the Superior Court, and CIBA–GEIGY petitioned this Court for allowance of appeal, which was granted.

The underlying facts of this case are as follows. On November 27, 1973, Maria Baldino, nee Bianco, consulted

---

1. The verdict against Dr. Castagna was in the sum of $750,000. On November 5, 1981, judgment was entered on this verdict in the sum of $838,972.60, which included delay damages.

2. Prior to submitting the case to the jury, the trial judge entered a non-suit as to Raymond Baldino on the basis that at the time of the injury he was not married to Maria Bianco. This ruling was not appealed and is not before us.

Dr. Armand Castagna, a general practitioner, for treatment of lower back pain. After a brief examination Dr. Castagna diagnosed her condition as an inflamed coccyx and prescribed Butozoiden-Alka, a drug manufactured by CIBA–GEIGY. The prescription was for 30 capsules to be taken over 10 days. Dr. Castagna prescribed this medication without having taken a complete medical history of the patient, and without having taken a blood test.

On January 24, 1974, Mrs. Baldino telephoned Dr. Castagna's office complaining of a recurrence of pain in the same area, and requested permission to have the Butazolidin prescription refilled. At trial there was some dispute as to whether Dr. Castagna ever authorized the refill, but this dispute was resolved by the jury contrary to Dr. Castagna's contentions. It is undisputed that the prescription was refilled by the Morris Park Pharmacy. Again, Dr. Castagna did not request a medical history or blood test, nor did he make any effort to ascertain whether Mrs. Baldino had experienced any side effects or adverse reactions from the first prescription. This latter omission was particularly significant since five days prior to the request for a refill (i.e. January 19, 1974), Mrs. Baldino had been to another physician, Dr. Herbert Lipkin, complaining of a sore throat, swollen glands, fatigue and bruising: all of which were listed in the then current prescribing information contained in the Physicians' Desk Reference as symptoms of possible adverse reaction to Butazolidin.

In August of 1974, Mrs. Baldino was diagnosed as suffering from aplastic anemia: a serious blood disorder which has resulted in a shortened life expectancy, an inability to have children, and general physical malaise; requiring her to undergo blood transfusions every two months, and take male hormones which have deepened her voice and caused abnormal growths of body hair. The jury found, and we agree that there was sufficient evidence to support this finding, that Mrs. Baldino's condition was proximately caused by the Butazolidin capsules.

At trial plaintiff sought to show that Dr. Castagna had negligently prescribed Butazolidin,[3] and that CIBA–GEIGY promoted Butazolidin in such a manner as to encourage physicians to over-prescribe this drug and their promotional campaign had the effect of nullifying otherwise adequate warnings. The theory of liability against CIBA–GEIGY was primarily based on this Court's decision in *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971), where we recognized a cause of action against drug manufacturers for the overpromotion of a drug that nullify otherwise adequate warnings.

In *Incollingo* we held that, assuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk. *Id.*, 444 Pa. at 288, 282 A.2d at 221. Rather, such a manufacturer is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous. *Id.*, 444 Pa. at 288 n. 8, 282 A.2d at 220 n. 8 (citing Section 388 of the Restatement (Second) of Torts). We also held that a drug manufacturer can be held to have breached his duty of reasonable care by promoting its product in such a way as to nullify printed warnings. However, resolution of "whether or not the printed words of warning were in effect cancelled out and rendered meaningless in the light of the sales effort made by the detail men, were questions properly for the jury." *Id.*, 444 Pa. at 289, 282 A.2d at 220.

In the present case the jury decided that CIBA–GEIGY did not violate the applicable standard of care. The question before us now is whether there was sufficient evidence in the record to support that determination.

3. Plaintiff contended that Dr. Castagna failed to pursue a less radical course of therapy, such as aspirin; failed to take the proper precautions before prescribing the drug, and approving the refill; and failed to advise her of the possible side effects of the drug. As noted above the jury found Dr. Castagna negligent, and that verdict is not a subject of this appeal.

■ It is well established in this Commonwealth that resolution of fact issues by a jury should not be disturbed unless such findings are clearly against the weight of the evidence. *See Battistone v. Benedetti,* 385 Pa. 163, 122 A.2d 536 (1956). Furthermore, where a trial judge has refused a motion for new trial on the ground that the evidence was sufficient, such an action should not be disturbed unless there is an abuse of discretion or a clear error of law. *Brown v. McLean Trucking Co.,* 434 Pa. 427, 256 A.2d 606 (1969). *See Ason v. Leonhart,* 402 Pa. 312, 165 A.2d 625 (1960).

A review of the record in this case clearly indicates that the Superior Court overstepped these well defined lines, and impermissibly upset the jury's verdict. Firstly, it was established that at the time of the transactions in question the printed warnings applicable to this drug were adequate and in compliance with the required standards of the Food and Drug Administration (FDA). Secondly, these warnings were published in the Physicians' Desk Reference volume, a standard reference work, published annually, containing the current warnings of drugs authorized for distribution by the FDA, and which Dr. Castagna owned. Additionally, it was established that each container which left the manufacturer contained an individual printed recital of the then current warnings, and that CIBA–GEIGY distributed desk top file cards which contained the warnings.

At the time of Dr. Castagna's prescription of Butazolidin those warnings provided in part:

"IMPORTANT NOTE: Butazolidin, brand of phenylbutazone (generic description), cannot be considered a simple analgesic and should never be administered casually. Each person should be carefully evaluated before treatment is started and should remain constantly under the close supervision of the physician. The following cautions should be observed:

1. Therapy should not be initiated until a careful detailed history and complete physical and laboratory examination, including a complete hemogram and urinalysis,

etc. of the patient have been made. These examinations should be made at regular, frequent intervals throughout the duration of this drug therapy.

2. Patients should be carefully selected, avoiding those in whom it is contraindicated as well as those who will respond to ordinary therapeutic measures, or those who cannot be observed at frequent intervals.

3. Patients taking this drug should be warned not to exceed the recommended dosage, since this may lead to toxic effects, and should discontinue the drug and report to the physician immediately any sign of:

 a. Fever, sore throat, lesions in the mouth (symptoms of blood dyscrasia).

 b. Dyspepsia, epigastric pain, symptoms of anemia, black or tarry stools or other evidence of intestinal ulceration or hemorrhage.

 c. Skin reactions.

 d. Significant weight gain or edema.

4. A trial period of one week of therapy is considered adequate to determine the therapeutic effect of the drug. In the absence of a favorable response, therapy should be discontinued.

 a. In the elderly (sixty years and over) the drug should be restricted to short-term treatment periods only—if possible, one week maximum.

5. Before prescribing Butazolidin, brand of phenylbutazone, for an individual patient, read thoroughly the information contained under each heading as follows:

The information to which paragraph 5 referred contained specifically detailed "Warnings" as to the "General Toxicity" of the drug, as well as specific "Precautions" which were unequivocally recommended to be observed with all patients. Those precautions provided:

PRECAUTIONS: Because of the unpredictability and severity of the potential side effects of Butazolidin brand of phenylbutazone therapy IN ALL PATIENTS the following should be accomplished at *regular* intervals:

1. A careful detailed history for
 a. the disease being treated
 b. the detection of the earliest signs of adverse reactions
2. A complete physical examination including check of the patient's weight.
3. A COMPLETE WEEKLY (especially for the aging) or an EVERY TWO WEEK BLOOD CHECK.
4. Any additional laboratory studies pertinent to the individual case.
5. Each patient should be warned to report immediately to his doctor the occurrence of fever, sore throat, oral lesions, salivary gland enlargement, black or tarry stools, weight gain, edema and any other sign or symptom pertinent to the individual case.
6. While on the drug, patients should be cautioned about participation in activity necessitating alertness and coordination as driving a car, etc. (emphasis in original)

Additionally, specific "Adverse Reactions" were contained in the printed warnings one of which was aplastic anemia, the condition which affected the plaintiff.

In *Incollingo, supra*, we cited with approval Comment j of Section 402A of the Restatement (Second) of Torts, which reads in part: "Where warning is given the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition nor is it unreasonably dangerous." We noted that the Restatement reaches the same conclusion as to drugs which serve a useful purpose notwithstanding a medically recognizable risk. In addition we held that where such drugs are available by prescription only, "the warning required is not to the general public or to the patient, but to the prescribing doctor." *Id.* 444 Pa. at 288, 282 A.2d at 220.

■ Plaintiffs do not seriously contest the adequacy of the above cited warnings.[4] Rather they argue that the

---

4. Appellees' brief describe these warning as "ample". (Appellees brief p. 4).

manufacturer promoted their product in such a way as to encourage physicians to ignore these warnings. In support of this position they point out that prior warnings were not as specific as the ones in question, and argue that CIBA–GEIGY's promotion over the prior twenty year period fostered a reliance by physicians on this product, and the salesmen who sold it, and encouraged physicians to ignore the new warnings.

On this issue Dr. Castagna's testimony consisted of his admission that he relied on the detail men of CIBA–GEIGY rather than the current published warnings. His excuse for this behavior was his contention that the detail men told him to ignore the warnings and that the warnings didn't apply to short term therapy. This testimony however was directly rebutted by the testimony of the two detail men who serviced Dr. Castagna at the time in question. Resolution of this conflicting testimony rested upon determination of credibility, which the jury made adversely to Dr. Castagna, and ultimately adversely to the plaintiff.

Plaintiff also introduced evidence, which focused on the perceived effect of CIBA–GEIGY's sales campaign on the medical profession in general, and on Dr. Castagna in particular. Here again there was conflicting evidence. Dr. Castagna's testimony was somewhat vague, in that he testified only about a general recollection of the alleged offensive material, and admitted that he had no specific recollection of the advertisements or literature which plaintiffs sought to introduce as offensive. In addition, it was undisputed that the material in question contained, at a minimum, directions to doctors regarding the necessity of compliance with the prescribing information: directions which in this case were admittedly ignored.

■ Finally, although plaintiffs introduced testimony of Dr. Herbert Lipkin which tended to support the claim that defendant's detail men minimized the effect of the changes in the prescribing information, CIBA–GEIGY countered this testimony with the testimony of two physicians specializing in rheumatology who testified that the new warnings were

effectively conveyed to them. CIBA–GEIGY also introduced the testimony of their national supervisor of detail men, Darrell Hayes, who testified as to the training received by the detail men, and the emphasis which was given to conveying the importance of the new warnings. Again, the jury was faced with a contradiction in the testimony, which they resolved in favor of one party and against the other. This was their prerogative and their duty.

 We have consistently held that a new trial should not be granted on a mere conflict in the testimony. *See* e.g. *Burrell v. Phila. Electric Co.,* 438 Pa. 286, 265 A.2d 516 (1970). Thus, we hold that the Superior Court erred in reversing the trial court.

In addition to the complaints addressed above, plaintiffs/appellees have raised a number of subsidiary issues concerning evidentiary rulings made by the trial judge which were affirmed by the Superior Court. However, appellees failed to file a cross appeal, and therefore these issues are not properly before us.

The order granting a new trial is reversed and we reinstate the judgment of the Court of Common Pleas of Philadelphia County.