**Thomas MOODY**

v.

**PHILADELPHIA HOUSING AUTHORITY and Police Officer McCole Badge No. 545.**

**Appeal of Police Officer McCOLE, Appellant. (Two Cases.)**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1996.
Decided March 8, 1996.

Eileen K. Fahey, for Appellant.

Michael A. Shore, for Appellee Thomas Moody.

Before PELLEGRINI and FLAHERTY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Patrol Officer McCole (Appellant) appeals from the order of the Court of Common Pleas of Philadelphia County denying Appellant's motion for a judgment notwithstanding the verdict (judgment NOV) or for new trial and granting the petition of Thomas Moody (Appellee) for attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, as amended, 42 U.S.C. § 1988 (Section 1988).

The trial court summarized the facts as follows:

Officer McCole was employed by defendant PHA [Philadelphia Housing Authority] at the time of his encounter with plaintiff Thomas Moody. Officer McCole is Caucasian and Mr. Moody is African–American.

On January 7, 1990, Officer McCole and another PHA Officer, responding to an anonymous complaint, approached Mr. Moody outside his home and questioned him regarding the possession of firearms. Mr. Moody explained that he and a friend had just returned from a weekend hunting trip in Bucks County. Indeed, plaintiff was a long-standing member of a local Philadelphia hunting and fishing club with meeting headquarters very nearby Mr. Moody's home. The Bucks County excursion netted a few rabbits and squirrels. After dropping off one of the other club members, Mr. Moody and his cousin drove to Mr. Moody's home and parked. The cousin already had taken two of the three hunting rifles into the house when the PHA officers arrived. Mr. Moody produced his hunting license and papers relat-

ing to ownership of the rifles for defendant McCole and gave McCole the third rifle which still was in the car. He also directed his cousin to retrieve the other two rifles from within his home and to show them to Officer McCole.

Officer McCole advised plaintiff that he was required to go with the officers to the police station. Despite the facts [sic] that Mr. Moody was not armed nor threatening but, instead, fully cooperative and prepared to go voluntarily with the PHA Housing Officers to the police station (facts which defendant McCole himself confirmed at trial), Officer McCole insisted that plaintiff place his hands behind his back and allow McCole to handcuff him. In response to plaintiff's verbal protest of the use of handcuffs (accompanied, at most, by a step forward or 'stance' in protest), the evidence established that Officer McCole repeatedly struck plaintiff with a blackjack on plaintiff's knee and legs, at least more than five times, and that when plaintiff fell to the ground, Officer McCole stepped on his face. Plaintiff suffered a multiple-fracture to his kneecap.

The defense claimed that plaintiff's injuries to his knee were caused when he fell to the ground. Plaintiff testified specifically, however, that he fell to the ground only after Officer McCole struck him in the knee, causing his leg to give way, and that it was this first blow which broke his kneecap. Plaintiff also very specifically identified Officer McCole as the one who spoke to him throughout and as the one who dealt the fracturing blow to plaintiff's knee.

Plaintiff testified that he was told he was under arrest, while defendant McCole insisted that he was engaged in nothing more than an investigative stop. Plaintiff ultimately was released from custody at the police station after a records search confirmed plaintiff's identity and that the rifles were not stolen.

The parties agreed that Officer McCole was acting within the scope of his employment at the time of his encounter with plaintiff.

At the close of evidence, the Court granted defendant PHA's motion for directed verdict based on sovereign immunity. The case was submitted to the jury on plaintiff's federal civil rights claim against defendant Officer McCole, individually, under 42 U.S.C.A. Section 1983. The jury returned a verdict in favor of plaintiff and awarded compensatory damages in the amount of $50,000.00 and an additional $75,000.00 as punitive damages.

 In an appeal from a denial of a motion for a judgment NOV, our standard of review is clear. A judgment NOV may be entered only in a clear case, where no two reasonable persons could fail to agree that the verdict was improper. A judgment NOV should not be entered where the evidence is conflicting on a material fact, and a reviewing court is required to consider the evidence, together with all reasonable inferences therefrom in the light most favorable to the verdict winner. *Fisch's Parking, Inc. v. Independence Hall Parking, Inc.*, 432 Pa.Superior Ct. 263, 638 A.2d 217 (1994). When a trial court has refused a motion for a new trial on the ground that the evidence was sufficient to support the verdict, such an action should not be disturbed unless there is an abuse of discretion or clear error of law. *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984).

 In the present case, the jury decided, pursuant to its answers to interrogatories on a special verdict sheet, that Appellee had been deprived of his right to be free from the use of excessive force and to be free from arrest without probable causes. The existence of probable cause is determined by whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991).

Appellant argues that the verdict was against the weight of the evidence because there was probable cause for Appellee's arrest, not for brandishing a weapon, but for

disorderly conduct, based on the uncontroverted testimony that Appellee refused to be handcuffed. Appellant argues that because the jury was not clearly instructed on this point, and also failed to understand that the issue of probable cause was to be determined by evaluating the situation from the officer's perspective, the denial of his motion for judgment NOV was legal error.

However, there was contradictory evidence about when Appellee was placed under arrest. Although Appellant testified that he advised Appellee that he was *not* under arrest and that he was only asked to be handcuffed for transportation purposes, Appellee testified otherwise. Appellee stated that he was just standing there when he was placed under arrest, and was told that he would be handcuffed, although he was fully cooperative and had agreed to go to the police station. Thus, the predicate conduct for Appellee's arrest, in Appellee's version, which the jury evidently chose to believe, could not have been Appellee's disorderly conduct in resisting Appellant's attempt to handcuff him,[1] because Appellee was under arrest prior to this attempt. Thus, there was sufficient evidence in the record from which the jury might reasonably have decided that there was no probable cause to arrest Appellee.

Questions of credibility and conflicts in the evidence are for the trier of fact to resolve and, if sufficient evidence exists in the records to support the trier of fact's finding, it will not be overturned. *Pennsylvania Department of Transportation, Bureau of Driver Licensing v. Zeltins*, 150 Pa. Cmwlth. 44, 614 A.2d 349 (1992). Here, there was sufficient evidence to support the jury's finding that Appellee was arrested without probable cause, and therefore there

was no basis for overturning the decision of the trier of fact.

Similarly, Appellant's argument that the weight of the evidence did not establish that Appellant used excessive force is without merit. As the trial court stated, "[s]ufficient, credible trial evidence refuting these arguments exists on this record and the jury's adverse determinations entered against Officer McCole in no manner warrant reversal. The Court will not now find facts that defendant [Appellant] unsuccessfully urged the jury to accept." (T.C. opinion at 9, April 20, 1995.)

An individual is entitled to damages under Section 1983 of the Civil Rights Act,[2] if it is proven that a person or persons have deprived him of some cognizable federal right while acting under the color of state law. Here, there was sufficient evidence to support the jury's determination that Appellee was denied his constitutional right to be free from excessive force and from arrest without probable cause, and therefore the trial court did not err in denying Appellant's motion for judgment NOV or new trial.

Next, Appellant argues that even if there was sufficient evidence to establish a claim against Appellant in his personal capacity under Section 1983, he was immune from suit because of his objectively reasonable reliance on existing law.[3] *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).[4] He states that as part of his training, Appellant was instructed that he can use force to complete an arrest and can commit an assault if he deems the situation dangerous to himself or others or to overcome resistance to arrest. He claims he reasonably relied on this and on the governing law, in particular 18 Pa.C.S. § 508,[5] when he struck Appellee on the

---

1. Because we find that there was contradictory evidence about when the arrest occurred, we need not consider whether Appellee's resistance to handcuffing amounted to disorderly conduct.

2. 42 U.S.C. § 1983.

3. In *Battle v. Philadelphia Housing Authority*, 406 Pa.Superior Ct. 578, 594 A.2d 769 (1991), it was determined that the PHA was a Commonwealth agency, entitled to sovereign immunity, rather than a local agency entitled to governmental immunity.

4. In *Hafer*, it was held that Commonwealth officers may be held personally liable for damages under Section 1983 based on actions taken in their official capacities.

5. Section 508 of the Crimes Code, Act of December 6, 1972, P.L. 1482 provides in pertinent part:

 § 508. Use of force in law enforcement
 (a) Peace officer's use of force in making arrest.—
 (1) A peace officer, or any person whom he has summoned or directed to assist him, need

"thigh" in order to subdue him and effectuate the arrest.

We hold that Appellant failed to raise this issue in post-verdict motions and therefore it is waived. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985). Moreover, even if it were not waived, we believe that Appellant's claim of immunity has no merit.

Where, as here, an excessive force claim arises in the context of an arrest or investigatory stop, it is properly characterized as one involving the protections of the Fourth Amendment, which guarantees the right for individuals to be secure in their persons against unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Although the test of reasonableness is not capable of precise or mechanical application, this test is properly applied when close attention is paid to the particular facts and circumstances of the case, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* Determining whether the force used is reasonable requires balancing the nature and quality of the intrusion into the individuals Fourth Amendment rights, against the countervailing governmental interests at stake. *Id.* The reasonableness inquiry in an excessive force case is an objective one, requiring review of whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. *Id.*

In light of the evidence presented at trial, we conclude that Appellant was not entitled to immunity based on his reasonable reliance on existing law regarding the use of force by police officers in effecting arrest. There was ample evidence in the record for the jury to conclude that the force used by Appellant was grossly disproportionate to the severity of the alleged crime, the threat to

the safety of the police officers or the public, and to the resistance showed by Appellee.

The question in determining the existence of qualified immunity is whether a reasonable person could have believed the defendant's action to be lawful in light of clearly established law and the information he possessed. *Henry v. Perry,* 866 F.2d 657 (3rd Cir.1989). Here, the evidence of record regarding the Philadelphia Police Department's pamphlets and policies concerning the use of force, as well as the existing statutory and case law regarding the use of force in law enforcement, showed that Appellant's use of force did not conform with police department standards nor with statutory law. Relying on the relevant statutory and case law, the trial court charged the jury that an officer is justified in using force when making a lawful arrest providing the force used is reasonable. Therefore, Appellant, had he raised and preserved the issue of qualified immunity, would not have been entitled to that defense because he did not reasonably rely on existing law.

Appellant next argues that the trial court abused its discretion by denying his request to ask the jury to explain the compensatory damage award. He claims that the jury verdict sheet suggested that for each civil rights violation the jury found, regardless of whether Appellee's injuries were related to one or both of the violations, the jury could award a separate amount of compensatory damages. Thus, the verdict sheet erroneously misled the jurors into thinking that Appellee could recover twice for the same injuries.

We hold that the jury sheet was completely clear and, therefore, the trial court did not abuse its discretion in denying Appellant's request to question the jury regarding the compensatory damage award.

Question one (1) read: "Do you find that the conduct of Defendant McCole deprived Plaintiff Moody of Plaintiff's constitutional

---

not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be

necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest.

right to be free from arrest without probable cause?" The jury foreperson replied yes to this question in open court. (R.R. 471a.) The court then asked, "Do you find that Plaintiff Moody suffered any injuries as a result of this depravation [sic] of his constitutional right to be free from arrest without probable cause?" (R.R. 471a.) The foreperson replied yes, and then the court asked the jury to, "state the amount of damages, if any, sustained by Plaintiff Moody as a result of this depravation [sic] of his constitutional right to be free from unlawful arrest without probable cause." The foreperson replied, "25,000." (R.R. 471a.)

Question two (2) and the follow up questions are the same as Question one (1) except that in each question the phrase, "constitutional right to be free from the use of excessive force" was substituted for the phrase, "constitutional right to be free from unlawful arrest without probable cause." (R.R. 472a.) The jury foreperson responded yes to all questions and again assessed damages at $25,000.

Thus, the jury's award did not represent a double recovery for injury to Appellee's knee. Instead, it clearly awarded compensatory damages for the pain and suffering associated with the deprivation of two distinct constitutional rights, in addition to medical expenses and the like directly associated with the injury to Appellee's knee. Thus, there was no need for the jury to explain its verdict on compensatory damages, and the trial court did not abuse its discretion in failing to direct the jury to respond to Appellant's inquiries in that regard.

Appellant next argues that the trial court abused its discretion in denying him the opportunity to amend the jury sheet interrogatory addressing punitive damages. Although the trial court charged the jury on the necessity to find outrageous conduct (R.R. 452a), question three (3) on the jury verdict sheet made no mention of the necessity of finding outrageous conduct, and Appellant argues this mitigated the jury charges and misled them into thinking that they could award punitive damages without first finding outrageous conduct.

However, Appellant does not mention in his brief that in the course of their deliberations, the jury submitted a question in writing to the Court asking for the definition of punitive damages. The Court then read the definition of damages from the Standard Civil Jury Instructions, No. 14.00, and Appellant's counsel then agreed, stating "I think it's a fair description of what punitive damages are." (R.R. 470a.) Thereafter, Appellant never objected that the substance of the jury instruction was incorrect.

■ Punitive damages are available against a state actor, under Section 1983, upon a showing of reckless or callous disregard or indifference to the plaintiff's rights and safety, as well as intentional violations of law. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Keenan v. City of Philadelphia*, 983 F.2d 459 (3rd Cir.1992). Here, after the jury submitted a written request for a definition of punitive damages, the trial court stated:

If you find that the conduct of the defendant was outrageous, you may award punitive damages as well as any compensatory damages in order to punish the defendant for his conduct and to deter the defendant and others from the commission of like acts. A person's conduct is outrageous when he acts with a bad motive or when he acts with reckless indifference to the interests of others. (R.R. 470a.)

■ As the standard for punitive damages found in the trial court's instruction is consistent with the standard required for awarding punitive damages in Section 1983 actions, we hold that the trial court correctly defined punitive damages, and any deficiency in the verdict sheet was cured by this subsequent explanation. Moreover, the explanation specifically addressed the need to find outrageous conduct. Therefore, the trial court did not abuse its discretion in denying Appellant's request to modify the verdict sheet.

Finally, Appellant argues that because Appellee was not entitled to prevail in this action, attorney's fees were erroneously awarded to Appellee as the prevailing party. Because we held that there was no error of law or abuse of discretion in the trial court's

decision denying Appellant's motion for a judgment NOV, and because Appellee was clearly the prevailing party, attorney's fees were properly awarded to Appellee under Section 1988 of the Civil Rights Attorney's Fees Award Act.

Accordingly, we affirm the decision of the trial court in its entirety.

### ORDER

AND NOW, this 8th day of March, 1996, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

PELLEGRINI, J., concurs in the result only.