# Lineberger v. Wyeth

*Robert E.J. Curran,* for plaintiff.
*Peter J. Grossi,* for defendants.

ACKERMAN, *J.,* May 23, 2005—Plaintiff, Patricia Lineberger, appeals this court's order dated March 22, 2005, granting the Wyeth defendants' motion for summary judgment and dismissing plaintiff's action. For the following reasons, this court's order should be affirmed.

## I. BACKGROUND

Plaintiff Lineberger commenced the within Phen-Fen mass tort action by complaint on November 13, 2002, alleging that she developed aortic and mitral valve regurgitation from her ingestion of two prescription diet drugs, Pondimin and Redux, manufactured by Wyeth. The basis of Lineberger's action is that Wyeth's failure to warn of the association between diet drugs and heart valve damage was the cause of her injuries.

On February 25, 2005, Wyeth moved for summary judgment arguing that Lineberger was unable to prove that a different warning regarding the association between the ingestion of diet drugs and valvular heart disease would have prevented her physician from prescribing her

the diet drugs. Wyeth further argued that, without evidence that a warning of valvular heart disease would have caused her physician to alter his prescribing practices, Lineberger is unable to establish that Wyeth's failure to warn was the proximate cause of her alleged injuries. On March 22, 2005, after consideration of Wyeth's motion and Lineberger's response thereto, this court granted summary judgment in Wyeth's favor and dismissed plaintiff's action with prejudice.

On April 18, 2005, Lineberger timely filed this appeal. On May 2, 2005, in response to this court's order, Lineberger filed her concise statement of matters pursuant to Pa.R.A.P. 1925(b). Plaintiff complains that this court committed an error of law in granting Wyeth's motion for summary judgment.[1]

## II. DISCUSSION

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law." Pa.R.C.P. 1035.2. "A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore,

---

1. This opinion will address this court's reasons for granting summary judgment in defendants' favor, notwithstanding its finding that Lineberger has failed to preserve any issue for appellate review. See *Kanter v. Epstein,* 866 A.2d 394, 400 (Pa. Super. 2004) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no concise statement at all.") (quoting *Commonwealth v. Dowling,* 778 A.2d 683, 686-87 (Pa.Super. 2001)).

there is no issue to be submitted to the jury." *Biernacki v. Presque Isle Condominiums Unit Owners Association,* 828 A.2d 1114, 1116 (Pa. Super. 2003) (quoting *Grandelli v. Methodist Hospital,* 777 A.2d 1138, 1143 (Pa. Super. 2001)). Where a motion for summary judgment is based upon insufficient evidence of facts, the adverse party must come forward with evidence essential to preserve the cause of action, and if he fails to do so, the moving party is entitled to judgment as a matter of law. See *id.*

The standard for reviewing a trial court's grant of summary judgment is well established: the reviewing court must "view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact in its favor." *Haney v. Pagnanelli,* 830 A.2d 978, 980 (Pa. Super. 2003) (quoting *Juniata Valley Bank v. Martin Oil Co.,* 736 A.2d 650, 655 (Pa. Super. 1999)). "In reviewing a grant of summary judgment, the appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion." *Biernacki,* 828 A.2d at 1116.

The purpose of summary judgment under Rule 1035.2 is "to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed." *Miller v. Sacred Heart Hospital,* 753 A.2d 829, 833 (Pa. Super. 2000) (quoting *Eaddy v. Hamaty,* 694 A.2d 639, 643 (Pa. Super. 1997)). A plaintiff "must state a prima facie case *before* he will be allowed to proceed to trial." *Eaddy,* 694 A.2d at 643. (emphasis in original)

At issue in the instant case is whether the record before this court contained sufficient evidence to permit

Lineberger to proceed to trial. Specifically, Wyeth argued that under the learned intermediary doctrine, Lineberger needed to show that had her physician, Dr. John Lafferty, received a different warning regarding the association between diet drugs and valvular heart disease, he would have altered his prescribing habits and thus her injury would have been avoided. After careful review of the record, this court concluded that Lineberger failed to carry her burden, and summary judgment was warranted.

"There is no question that manufacturers of potentially dangerous drugs are held to a high degree of care." *Incollingo v. Ewing,* 444 Pa. 263, 286, 282 A.2d 206, 219 (1971). But, unlike the duty imposed on most product manufacturers, Pennsylvania courts have repeatedly refused to impose strict liability on manufacturers of prescription drugs. See *Hahn v. Richter,* 543 Pa. 558, 563, 673 A.2d 888, 891 (1996) ("[W]here the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, *i.e.,* the manufacturer's negligence, is the only recognized basis of liability."); *Baldino v. Castagna,* 505 Pa. 239, 244, 478 A.2d 807, 810 (1984) ("[A]ssuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk."); *Incollingo v. Ewing,* 444 Pa. at 288, 282 A.2d at 219-20. Pennsylvania courts have recognized that "[t]here are some products which, in the present state of human knowledge, are quite incapable of being made safe for their ordinary and intended use.

These are especially common in the field of drugs . . . ." *Coyle v. Richardson-Merrell Inc.,* 526 Pa. 208, 213, 584 A.2d 1383, 1385 (1991) (citing Restatement (Second) of Torts §402A (1965), comment k).

Accordingly, "a manufacturer [of prescription drugs] is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied, of the facts which make it likely to be dangerous." *Baldino,* 505 Pa. at 244, 478 A.2d at 810. This duty to warn runs not to the patient or the general public, however, but to the prescribing physician. See *Incollingo,* 444 Pa. at 288, 282 A.2d at 220 ("Since the drug was available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor."); *Rosci v. Acromed Inc.,* 447 Pa. Super. 403, 423, 669 A.2d 959, 969 (1995) ("The intended 'user' in a case involving a prescription drug or device is, of course, the prescribing physician."); *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa. Super. 418, 431, 307 A.2d 449, 457 (1973) ("It is for the prescribing physician to use his own independent medical judgment, taking into account the data supplied to him from the drug manufacturer, other medical literature, and any other source available to him, and weighing that knowledge against the personal medical history of his patient, whether to prescribe a given drug."); *Demmler v. SmithKline Beecham Corp.,* 448 Pa. Super. 425, 431, 671 A.2d 1151, 1154 (1996) ("the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient" and weigh "the benefits of any medication against its potential dangers."). In discussing the rationale behind what

has come to be known as the "learned intermediary" doctrine, the *Leibowitz* court explained:

"In approving a drug for marketing purposes, the F.D.A. is ever mindful of risks inherent in the use of a proposed drug. It also approves same because of the benefit said drug may have for the public as a whole. Every surgical procedure carries certain risks, as do driving an automobile or crossing an intersection. As different standards apply in the case of prescription drugs and over-the-counter drugs (the former requiring that the prescribing physician exercise the final judgment in each case), the risks must be balanced against the utility to the public-at-large. The warnings are directed to the prescribing physician who must make that balancing judgment in light of his personal knowledge of the patient's medical history." *Leibowitz,* 224 Pa. Super. at 432, 307 A.2d at 457-58.

Furthermore, "assuming that plaintiff[] [has] established both duty and a failure to warn, plaintiff[] must further establish proximate causation by showing that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." *Demmler,* 448 Pa. Super. at 434, 671 A.2d at 1155. Significantly, "[i]n the event that a warning is inadequate, proximate cause is not presumed." *Id.* Thus, where defendant has moved for summary judgment, in order to proceed to trial, the burden is on plaintiff to come forward with evidence to show that a different warning would have caused her physician to change his prescribing habits. *Id.,* 448 Pa. Super. at 434, 671 A.2d at 1155. "[T]o create a jury question, the evidence introduced must be of sufficient weight to estab-

lish . . . some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." *Id.* Absent proof that a more thorough or more explicit warning would have prevented plaintiff's use of the drug, she cannot establish that defendants' alleged failure to warn was the proximate cause of her injuries. *Id.*

In the instant case, it is undisputed that the drugs Pondimin and Redux are available only by prescription. There is also no question that Lineberger was under the care of Dr. Lafferty during the period that she took Pondimin and Redux for weight loss. Thus, Wyeth's duty ran directly to Dr. Lafferty as Lineberger's prescribing physician. This court concluded from the record that before prescribing diet drugs to Lineberger, Dr. Lafferty carefully weighed the risks and benefits to her health. Dr. Lafferty specifically chose Lineberger to be included among a group of patients that he personally felt were good candidates for diet drug therapy. See deposition of John Lafferty M.D., 2/15/05, p. 119, Wyeth's motion for summary judgment, exhibit A; see also, affidavit of John Morrison Lafferty M.D., 3/9/05, ll. 5-6, plaintiff's response to Wyeth's motion for summary judgment, exhibit 1. Although Dr. Lafferty was unaware of the association between diet drugs and valvular heart disease at the time he prescribed diet drugs to Lineberger, he testified that he selected a "group of people who were very unlikely to have a cardiovascular event, so therefore [] didn't think it was a material risk for these patients." See Lafferty deposition, 2/15/ 05, pp. 37-38, 119, plaintiff's response to Wyeth's motion for summary judgment, exhibit 2; Lafferty affidavit, ll. 7-8.

Dr. Lafferty further testified that had a warning for valvular heart disease been given, he still would have prescribed the drugs to these selected patients:

"Q: And, doctor, if the words valvular heart disease had appeared alongside heart arrest, heart failure, myocardial infarction, it's a fair statement that you wouldn't have considered that a material risk given what was known at that time and you would have nevertheless prescribed it to these select patients?

"A: I think I would have still prescribed it.

"Q: And the same for Pondimin, doctor: If those words had appeared in the 'warnings' section would you have still prescribed it to that select group of patients that you—that you chose to?

"A: Yes." See Lafferty deposition, 2/15/05, pp. 119-20.

This testimony was further strengthened by Dr. Lafferty's affidavit[2] at line 9 which reads:

"Even if the words 'valvular heart disease' had been added to the 'warnings' section of the label of the Physician's Desk Reference while Pondimin and/or Redux were still on the market, I probably would have prescribed both drugs depending on the level of risk." See Lafferty affidavit, 3/9/05, l. 9.

Given Dr. Lafferty's uncontroverted testimony, this court had no choice but to conclude that he still would have prescribed Lineberger the diet drugs even if Wyeth

_____

2. Dr. Lafferty's affidavit, which corroborates his deposition testimony, was in fact submitted to this court by plaintiff Lineberger in her response to Wyeth's motion.

had provided a warning including the risk of valvular heart disease. As previously discussed, the burden rests on Lineberger to establish, through evidence of "sufficient weight," that an adequate warning would have prevented her from receiving the drug. See *Demmler,* 448 Pa. Super. at 434, 671 A.2d at 1155. This she has failed to do. Without evidence that Dr. Lafferty would not have prescribed the diet drugs, Lineberger is unable to establish that Wyeth's alleged failure to warn was the proximate cause of her injuries. See *id.*

In an attempt to avoid summary judgment in the face of Dr. Lafferty's testimony, Lineberger argues that she is entitled to a rebuttable presumption that either she or Dr. Lafferty (or both) would have followed an adequate warning had Wyeth provided one. This so-called "heeding presumption" was first adopted in Pennsylvania in *Coward v. Owens-Corning Fiberglas Corp.,* 729 A.2d 614 (Pa. Super. 1999). In *Coward,* an asbestos product liability action, our Superior Court discussed at length the adoption of strict liability in this Commonwealth. See *id.,* 729 A.2d at 618-20. Specifically, in adopting strict liability under section 402A, our Supreme Court molded Pennsylvania jurisprudence to "assure injured plaintiffs a right of recovery, regardless of fault, if their injuries were caused by a product lacking any element necessary for its intended use." *Id.* at 619. In an attempt to further these policy objectives, the *Coward* court adopted the heeding presumption in cases "where warnings or instructions are required to make a product nondefective and a warning has not been given" and shifted the burden of production to manufacturers of such products. See *id.* at 621.

After review of existing Pennsylvania case law, we conclude that the "heeding presumption" is not applicable to the instant case as it has been applied exclusively to strict liability claims. It is well-settled in this Commonwealth that negligence is the only recognized basis of liability for failure to warn for manufacturers of prescription drugs. See *Incollingo,* 444 Pa. at 287-88, 282 A.2d at 219. Through *Incollingo* and its progeny, Pennsylvania courts have repeatedly declined to impose strict liability on prescription drug manufacturers. See *Hahn, supra; Coyle, supra; Baldino, supra; Incollingo, supra; Rosci, supra; Leibowitz, supra.* Our courts have emphasized this guiding principle by repeatedly ruling that, in such cases, the manufacturers' duty runs not to the patient but to the physician. See *Incollingo,* 444 Pa. at 288, 282 A.2d at 220. Lineberger has not provided, nor have we found, any Pennsylvania cases where the heeding presumption has been applied to failure to warn cases involving prescription drugs. Therefore, Lineberger's argument that she is entitled to a presumption that she would have heeded a warning of the risk of valvular heart disease, had Wyeth provided one, and refused to take the diet drugs, flies in the face of Pennsylvania jurisprudence and thus fails.

Lineberger cites two cases from other jurisdictions, specifically, *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848 (10th Cir. 2003) and *DeLuryea v. Winthrop Lab.,* 697 F.2d 222 (8th Cir. 1983). See plaintiff's response to Wyeth's motion for summary judgment, p. 7, n.1. According to Lineberger, *Thom* represents "the vast majority of jurisdictions" which permit a heeding presumption. See *id.* As noted *supra,* in Pennsylvania, only in a

strict liability action is a heeding presumption applicable. In Pennsylvania the heeding presumption has never been applied to a negligence case, such as the instant case.

In the *DeLuryea* case, which espouses a weakened version of the learned intermediary doctrine, the Eighth Circuit asserts that the failure to introduce testimony of the prescribing doctor was not fatal to the plaintiff's case on the issue of proximate cause. See *DeLuryea,* 697 F.2d at 225.

In Pennsylvania, we do not have a weakened version of the learned intermediary doctrine, but, rather, our courts have strictly interpreted that doctrine, enforcing a policy which has been designed to protect manufacturers of prescription drugs from liability. See *Incollingo, supra; Demmler, supra.* Moreover, in Pennsylvania, the prescribing doctor *must* testify that, had he received a different warning, he would have altered his prescribing habits. See *Demmler, supra.*

Lineberger finally argues that the conduct of Wyeth's "detail men" nullified the warnings or gave her doctor a false sense of safety in the absence of a warning. Lineberger's argument presents no issue for two reasons: (1) the basis of plaintiff's claim is that no warning regarding valvular heart injury was ever provided by Wyeth, thus it could not be nullified, and (2) it is evident from Dr. Lafferty's testimony that Wyeth's "detail men" had no effect on his decisions to prescribe the diet drugs. In fact, Dr. Lafferty's testimony revealed that, although he spoke to a sales representative regarding Redux, he had no specific recollection of what was discussed. See Lafferty deposition, 2/15/05, pp. 129-31, plaintiff's exhibit 2.

## III. CONCLUSION

For the foregoing reasons, this court concludes that Lineberger cannot establish that Wyeth's alleged failure to warn of the risk of valvular heart disease was the proximate cause of her injuries. Therefore, summary judgment was warranted and this court's order should be affirmed.