**Adams v. Wyeth**

C.P. of Philadelphia County, January Term 2003, no. 3452.

*Robert E.J. Curran,* for plaintiff.
*Michael T. Scott,* for defendants.

ACKERMAN, *J.,* June 13, 2005—Plaintiff, Laura Adams, appeals this court's order dated April 12, 2005, and docketed April 15, 2005, granting the Wyeth defendants' motion for summary judgment and dismissing plaintiff's claims with prejudice. For the following reasons, this court's order should be Affirmed.

## I. BACKGROUND

Plaintiff Adams commenced the within Phen-Fen mass tort action by complaint on January 27, 2003, alleging that she developed moderate aortic regurgitation from ingesting the prescription diet drug, Pondimin, for approximately 300 days beginning January 1996. See Adams short form complaint ¶¶4, 6. Adams' complaint lists J. Anthony Gillett M.D. as the only physician who prescribed Pondimin to her during this time. See *id.* at ¶5. Dr. Gillett was a psychiatrist for whom Adams worked as a secretary between 1994 and 1998. Dr. Gillett was never deposed and is assumed by the plaintiff to be deceased. See deposition of Laura Adams, p. 92, Wyeth's motion for summary judgment, exhibit B; plaintiff's response to summary judgment, p. 1, n.1. According to Adams' deposition testimony, "[Dr. Gillett] was an older

gentleman, and it's been 10 years or so. He would be well into his 90s, so I'm assuming that." See deposition of Laura Adams, p. 92. Absolutely no evidence of any sort, either documentary or testimonial, regarding Dr. Gillett's reasons for prescribing Pondimin for Adams was presented to this court. The basis of Adams' action is that Wyeth's failure to warn of the association between diet drugs and heart valve damage was the cause of her injury.

On March 21, 2005, Wyeth moved for summary judgment, arguing that Adams was unable to prove that a different warning regarding the association between the ingestion of Pondimin and valvular heart disease would have prevented Dr. Gillett from prescribing her the Pondimin. Wyeth further argued that, without this evidence, Adams cannot prove that Wyeth's alleged failure to warn was the proximate cause of her alleged heart valve injury.

In her response to Wyeth's motion, Adams argued that she is entitled to a reasonable inference that, had Wyeth provided an adequate warning to her and her physician, that warning would have been read and heeded, and her injury would have been avoided. To support her argument, Adams attached to her response the affidavit of Harris Busch M.D., Ph.D., a pharmaceutical consultant, wherein he stated:

"In my opinion, Wyeth did not adequately warn health care professionals regarding the risks associated with the use of fenfluramine or dexfenfluramine, including the risk of valvular heart disease. In my opinion, the risks outweighed any possible but unproven benefit of fenfluramine or dexfenfluramine. In my opinion, if Wyeth had adequately warned regarding the medical risks asso-

ciated with the use of fenfluramine and dexfenfluramine, no reasonable doctor or health care professional would have prescribed these drugs." See affidavit of Harris Busch M.D., Ph.D., plaintiff's response to Wyeth's motion for summary judgment, exhibit A.

Adams argued that Dr. Busch's testimony satisfied her burden on proximate cause and was adequate evidence for a jury to infer that Dr. Gillett, as a "reasonable doctor," would not have prescribed Pondimin had he received a different warning.

On April 12, 2005, after consideration of Wyeth's motion, Adams' response thereto and Wyeth's reply, this court granted summary judgment in Wyeth's favor and dismissed plaintiff's action with prejudice.

On May 2, 2005, Adams timely filed this appeal. On May 16, 2005, in response to this court's order, Adams filed her concise statement of matters pursuant to Pa. R.A.P. 1925(b). Plaintiff complains generally that this court committed an error of law in granting Wyeth's motion for summary judgment and raises the following sub-issues:

(1) Whether plaintiff's summary judgment evidence raised material issues of fact precluding summary judgment for defendants.

(2) Whether the *Nanty-Glo*[1] rule precludes summary judgment for defendants.

(3) Whether the trial court applied an unduly restrictive interpretation of proximate cause.

---

1. Although not specifically stated in plaintiff's 1925(b), this court takes notice that plaintiff is referring to *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932).

(4) Whether plaintiff is entitled to a rebuttable heeding presumption that, had her prescribing doctor been given a warning, he would have heeded the warning and either told her of the risk or refused to prescribe the drug.

## II. DISCUSSION

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law." Pa.R.C.P. 1035.2. "A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury." *Biernacki v. Presque Isle Condos. Unit Owners Ass'n*, 828 A.2d 1114, 1116 (Pa. Super. 2003) (quoting *Grandelli v. Methodist Hospital*, 777 A.2d 1138, 1143 (Pa. Super. 2001)). Where a motion for summary judgment is based upon insufficient evidence of facts, the adverse party must come forward with evidence essential to preserve the cause of action and, if he fails to do so, the moving party is entitled to judgment as a matter of law. See *id.*

The standard for reviewing a trial court's grant of summary judgment is well established: the reviewing court must "view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact in its favor." *Haney v. Pagnanelli*, 830 A.2d 978, 980 (Pa. Super. 2003) (quoting *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 655 (Pa. Super. 1999)). "In reviewing a grant of summary judgment, the appellate court may disturb the

trial court's order only upon an error of law or an abuse of discretion." *Biernacki,* 828 A.2d at 1116.

The purpose of summary judgment under Rule 1035.2 is "to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed." *Miller v. Sacred Heart Hospital,* 753 A.2d 829, 833 (Pa. Super. 2000) (quoting *Eaddy v. Hamaty,* 694 A.2d 639, 643 (Pa. Super. 1997)). A plaintiff "must state a prima facie case *before* he will be allowed to proceed to trial." *Eaddy,* 694 A.2d at 643. (emphasis in original)

At issue in the instant case is whether the record before this court contained sufficient evidence to permit Adams to proceed to trial. Specifically, Wyeth argued that Adams failed to establish proximate causation because she was unable to prove that Dr. Gillett would have altered his prescribing habits had he received a warning which included the association between Pondimin and valvular heart disease. After careful review of the record, this court concluded that Adams failed to carry her burden, and summary judgment was warranted.

"There is no question that manufacturers of potentially dangerous drugs are held to a high degree of care." *Incollingo v. Ewing,* 444 Pa. 263, 286, 282 A.2d 206, 219 (1971). But unlike the duty imposed on most product manufacturers, Pennsylvania courts have repeatedly refused to impose strict liability on manufacturers of prescription drugs. See *Hahn v. Richter,* 543 Pa. 558, 563, 673 A.2d 888, 891 (1996) ("[W]here the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, *i.e.,* the manufacturer's negligence,

is the only recognized basis of liability."); *Baldino v. Castagna,* 505 Pa. 239, 244, 478 A.2d 807, 810 (1984) ("[A]ssuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk."); *Incollingo v. Ewing,* 444 Pa. at 288, 282 A.2d at 219-20. Pennsylvania courts have recognized that "[t]here are some products which, in the present state of human knowledge, are quite incapable of being made safe for their ordinary and intended use. These are especially common in the field of drugs . . . ." *Coyle v. Richardson-Merrell Inc.,* 526 Pa. 208, 213, 584 A.2d 1383, 1385 (1991) (citing Restatement (Second) of Torts §402A (1965), Comment k).

Accordingly, a "manufacturer [of prescription drugs] is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous." *Baldino,* 505 Pa. at 244, 478 A.2d at 810. This duty to warn runs not to the patient or the general public, however, but to the prescribing physician. See *Incollingo,* 444 Pa. at 288, 282 A.2d at 220 ("Since the drug was available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor."); *Rosci v. Acromed Inc.,* 447 Pa. Super. 403, 423, 669 A.2d 959, 969 (1995) ("The intended 'user' in a case involving a prescription drug or device is, of course, the prescribing physician."); *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa. Super. 418, 431, 307 A.2d 449, 457 (1973) ("It is for the prescribing physician to use his own independent medical judgment, taking into account the data supplied to

him from the drug manufacturer, other medical literature, and any other source available to him, and weighing that knowledge against the personal medical history of his patient, whether to prescribe a given drug."); *Demmler v. SmithKline Beecham Corp.,* 448 Pa. Super. 425, 431, 671 A.2d 1151, 1154 (1996) (A "prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient" and weigh "the benefits of any medication against its potential dangers."). In discussing the rationale behind what has come to be known as the "learned intermediary" doctrine, the *Leibowitz* court explained:

"In approving a drug for marketing purposes, the F.D.A. is ever mindful of risks inherent in the use of a proposed drug. It also approves same because of the benefit said drug may have for the public as a whole. Every surgical procedure carries certain risks, as do driving an automobile or crossing an intersection. As different standards apply in the case of prescription drugs and over-the-counter drugs (the former requiring that the prescribing physician exercise the final judgment in each case), the risks must be balanced against the utility to the public-at-large. The warnings are directed to the prescribing physician who must make that balancing judgment in light of his personal knowledge of the patient's medical history." *Leibowitz,* 224 Pa. Super. at 432, 307 A.2d at 457-58.

Furthermore, "assuming that plaintiff[] [has] established both duty and a failure to warn, plaintiff[] must further establish proximate causation by showing that, had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." *Demmler,* 448 Pa. Su-

per. at 434, 671 A.2d at 1155. Significantly, "[i]n the event that a warning is inadequate, proximate cause is not presumed." *Id.* Thus, where defendant has moved for summary judgment, in order to proceed to trial, the burden is on plaintiff to come forward with evidence to show that a different warning would have caused her physician to change his prescribing habits. *Id.* "[T]o create a jury question, the evidence introduced must be of sufficient weight to establish . . . some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." *Id.* Absent proof that a more thorough or more explicit warning would have prevented plaintiff's use of the drug, she cannot establish that defendants' alleged failure to warn was the proximate cause of her injuries. *Id.*

In the instant case, it is undisputed that the drug Pondimin is available only by prescription and that Dr. Gillett was the only physician to prescribe Pondimin for Adams. Thus, Wyeth's duty ran directly to Dr. Gillett as Adams' prescribing physician.

Adams initially alleges that the evidence presented raised material issues of fact which precluded summary judgment pursuant to *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932). Under *Nanty-Glo,* "a court may not summarily enter a judgment where the evidence depends upon oral testimony." *Resolution Trust Corp. v. Urban Redevelopment Authority of Pittsburgh,* 536 Pa. 219, 224, 638 A.2d 972, 975 (1994). More specifically, a court is precluded from usurping the role of the jury regarding the credibility of witnesses where genuine issues of material fact have been raised. See *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989).

The precepts of *Nanty-Glo* are inapplicable to the case at bar, however, as Adams has failed to state a prima facie case. See *Miller* and *Eaddy, supra.* As previously noted, to state a prima facie case, Adams had the burden to establish proximate cause by coming forward with evidence of sufficient weight showing that, had Wyeth provided an adequate warning regarding Pondimin ingestion and valvular heart disease, Dr. Gillett would have changed his prescribing habits and she would not have received the drug. See *Demmler, supra.* This she failed to do.

Adams offers absolutely no evidence, either testimonial or documentary, regarding Dr. Gillett's prescribing of Pondimin for her. The record before this court also is devoid of what attempts, if any, Adams made to locate Dr. Gillett and secure either his testimony or his records. Adams merely assumes that Dr. Gillett is dead, based on his age at the time he prescribed the Pondimin. See deposition of Laura Adams, p. 92. The mere fact that Adams failed to provide evidence from Dr. Gillett provides no justification for a change or expansion of existing law. Any absence or death of a material witness in any litigation is a risk that falls upon the party who depends upon that witness to satisfy his burden, in this case Adams' burden. Without *some* evidence that Dr. Gillett would have changed his prescribing habits, there can be no issue to present to the jury.

Plaintiff Adams, in this case, did not provide any record as to:

(1) What efforts were made by plaintiff to locate Dr. Gillett and determine his availability to testify; or

(2) If the plaintiff could locate Dr. Gillett and he was available to testify, why his testimony was not preserved.

While in extreme circumstances, there might be an interesting argument for the *appellate court* to consider the liberalization of the learned intermediary doctrine, the absence of an explanatory record in this case does not justify such a review. The burden to produce such an explanatory record falls on the plaintiff, Adams, who has the burden to prove causation which cannot be satisfied with mere assumptions. Without evidence from Dr. Gillett, *himself,* that *he* would not have prescribed the Pondimin, Adams is unable to establish that Wyeth's failure to warn was the proximate cause of her injury. See *Demmler, supra.*

Contrary to Adams' assertions, the affidavit of Dr. Busch, attesting to what a "reasonable doctor" would have done had a different warning been supplied is insufficient evidence to create a material issue of fact and satisfy her burden on proximate causation. As *Demmler, supra,* makes clear, the evidence required to establish a reasonable likelihood is evidence that the learned intermediary, namely, Dr. Gillett, and *only Dr. Gillett,* would provide to the effect that *he, Dr. Gillett,* would have altered *his* behavior. Accordingly, an affidavit or testimony of Dr. Busch as to what a "reasonable doctor" would have done with appropriate knowledge is not admissible, is irrelevant and is contrary to the legal standard long established under Pennsylvania law.

Adams similarly attempts to avoid summary judgment in the absence of evidence from Dr. Gillett by arguing that that she is entitled to a rebuttable presumption that Dr. Gillett would have followed an adequate warning, had Wyeth provided one, and either told her of the risk or refused to prescribe the drug.

The so-called "heeding presumption" was first adopted in Pennsylvania in *Coward v. Owens-Corning Fiberglas Corp.,* 729 A.2d 614 (Pa. Super. 1999). In *Coward,* an asbestos product liability action, our Superior Court discussed at length the adoption of strict liability in this Commonwealth. See *id.,* 729 A.2d at 618-20. Specifically, in adopting strict liability under section 402A, our Supreme Court molded Pennsylvania jurisprudence to "assure injured plaintiffs a right of recovery, regardless of fault, if their injuries were caused by a product lacking any element necessary for its intended use." *Id.* at 619. In an attempt to further these policy objectives, the *Coward* court adopted the heeding presumption in cases "where warnings or instructions are required to make a product non-defective and a warning has not been given" and shifted the burden of production to manufacturers of such products. See *id.* at 621.

Adams argues that her case, and diet drug cases in general, are similar to the situation in *Coward,* where the manufacturer and a third party influence plaintiff's decision to use the defective product. In *Coward,* it is the employer who chooses to use asbestos in the workplace; in a prescription drug case, plaintiff relies upon the prescribing doctor to do what is in her best interests. Adams concludes, therefore, that, because she is in the position with the least power and the least information, a "heeding presumption" should apply.[2]

After review of existing Pennsylvania case law, we conclude that the "heeding presumption" is not appli-

---

2. Adams asserts that at least nine states have adopted a heeding presumption in the pharmaceutical context. See Adams' response to Wyeth's motion for summary judgment, p. 5 n.3.

cable to the instant case as it has been applied exclusively to strict liability claims. It is well-settled in this Commonwealth that negligence is the only recognized basis of liability for failure to warn for manufacturers of prescription drugs. See *Incollingo,* 444 Pa. at 286, 282 A.2d at 219. Through *Incollingo* and its progeny, Pennsylvania courts have repeatedly declined to impose strict liability on prescription drug manufacturers. See *Hahn, supra; Coyle, supra; Baldino, supra; Incollingo, supra; Rosci, supra; Leibowitz, supra.* Our courts have emphasized this guiding principle by repeatedly ruling that, in such cases, the manufacturers' duty runs not to the patient but to the physician. See *Incollingo,* 444 Pa. at 288, 282 A.2d at 220. Therefore, Adams' argument, that she is entitled to a presumption that Dr. Gillett would have heeded a warning of the risk of valvular heart disease, had Wyeth provided one, and refused to prescribe the Pondimin, flies in the face of Pennsylvania jurisprudence and thus fails.

## III. CONCLUSION

For the foregoing reasons, this court concludes that Adams cannot establish that Wyeth's alleged failure to warn of the risk of valvular heart disease was the proximate cause of her injury. Therefore, summary judgment was warranted and this court's order should be Affirmed.