671 A.2d 1151

**Ada M. DEMMLER and L. Frank Demmler, Appellants,**

**v.**

**SMITHKLINE BEECHAM CORPORATION, a Pennsylvania Corporation, formerly known as SmithKline Beckman Corporation, trading as: Smith Kline & French Laboratories, Appellee.**

Superior Court of Pennsylvania.

Argued May 25, 1995.

Filed Feb. 14, 1996.

426

428

Richard G. Johnson, Pittsburgh, for appellants.

Kerry A. Kearney, Pittsburgh, for appellee.

Before WIEAND, DEL SOLE and CERCONE, JJ.

WIEAND, Judge:

On March 23, 1988, after taking a physician-prescribed dosage of the drug Parnate, Ada M. Demmler suffered a hypertensive crisis, which is a side effect of Parnate. The episode caused Demmler to become permanently disabled, including a partial paralysis and brain damage. Parnate is an antidepressant medication manufactured and sold by defendant, SmithKline Beecham Corporation (SmithKline), with warnings concerning hypertensive crises. It is a psychiatric drug classified as an monoamine oxidase inhibitor (MAOI). Christopher M. Erstling, M.D., a psychiatrist at Shadyside Hospital, had prescribed the drug to Demmler for treatment of her depression. In this appeal, it is contended that Smith-Kline failed to give adequate warnings concerning an available antidote to hypertensive crises.

On March 22, 1990 Demmler and her husband, L. Frank Demmler, initiated a strict liability action against SmithKline, alleging inadequate warnings, inadequate product descriptions, and overpromotion of Parnate. On May 10, 1994, the trial court granted summary judgment in favor of SmithKline on all claims, except plaintiffs' claim of inadequate warning as it related to Nifedipine, an alleged antidote to hypertensive crises associated with Parnate. On September 30, 1994, after reviewing plaintiffs' supplemental expert report [1] and Smith-Kline's motion to dismiss, the trial court found that there was no evidence supporting a claim that SmithKline's package inserts or warnings to physicians were inadequate and, there-

---

1. Plaintiffs' original expert report was authored by an unknown person. The trial court found this report to be inadequate and granted plaintiffs an additional 120 days to correct its deficiencies.

fore, dismissed the remaining portion of plaintiffs' case. The Demmlers filed this timely appeal.

 A trial court's order dismissing a case prior to trial is properly characterized as either a summary judgment or a judgment on the pleadings. See: *Gallagher v. Harleysville Mut. Ins. Co.*, 421 Pa.Super. 192, 202, 617 A.2d 790, 796 (1992). Since discovery was fully conducted in the instant case, we will treat the order entered as the entry of summary judgment. See: Pa.R.C.P. 1035, 42 Pa.C.S. Our standard of review, therefore, is as follows:

> An order granting summary judgment is appropriate when a review of all the interrogatories, affidavits and depositions of record indicates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Buckno v. Penn Linen & Uniform Service, Inc.*, 428 Pa.Super. 563, 565, 631 A.2d 674, 675 (1993). However, "[a]n entry of summary judgment may be granted only in cases where the right is clear and free of doubt." *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). When considering whether summary judgment is proper, the record must be examined in the light most favorable to the non-moving party, with all doubts resolved against the moving party. *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 170, 608 A.2d 1061, 1064 (1992).

*Ducko v. Chrysler Motors Corp.*, 433 Pa.Super. 47, 49, 639 A.2d 1204, 1205 (1994). See also: *Fletcher v. Raymond Corp.*, 424 Pa.Super. 605, 609–610, 623 A.2d 845, 847 (1993); *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 273–274, 505 A.2d 973, 978 (1985).

 Under Pennsylvania law, strict liability is imposed on the manufacturer or seller of a product in a defective condition unreasonably dangerous to the user or consumer. *Incollingo v. Ewing*, 444 Pa. 263, 287, 282 A.2d 206, 219 (1971). In order to recover in a products liability case, the plaintiff has the burden of showing that (1) the product was defective; (2) the defect caused the injury; and (3) the defect existed at the time

the product left the manufacturer. *Ducko v. Chrysler Motors Corp., supra* at 50, 639 A.2d at 1205; *Fletcher v. Raymond Corp., supra* at 610, 623 A.2d at 848. "A product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product. *Fletcher v. Raymond Corp., supra.* See also: *Incollingo v. Ewing, supra.* Of course, "[t]here are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous." Restatement (Second) of Torts, § 402A, Comment k. See also: *Incollingo v. Ewing, supra* at 287–288, 282 A.2d at 219–220; *Hahn v. Richter,* 427 Pa.Super. 130, 628 A.2d 860 (1993) (en banc), *allocatur granted* in 537 Pa. 650, 644 A.2d 736 (1994); Restatement (Second) of Torts, § 388.

 "Whether a product is defective because of a failure to give an adequate warning is initially a question of law to be decided by the trial court." *Fletcher v. Raymond Corp., supra* at 611, 623 A.2d at 848. " '[W]here the drug is available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor.' " *Dion v. Graduate Hosp. of Univ. of Penna.,* 360 Pa.Super. 416, 422, 520 A.2d 876, 879 (1987), quoting *Incollingo v. Ewing, supra* at 288, 282 A.2d at 220. See also: *Hahn v. Richter, supra* at 142, 628 A.2d at 866. " 'As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative.' " *Windham v. Wyeth Laboratories,* 786 F.Supp. 607, 611 (S.D.Miss.1992), quoting *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). See also: *Hahn v. Richter, supra; Mazur v. Merck & Co., Inc.,* 742

F.Supp. 239, 252 (E.D.Pa.1990). Generally, expert medical testimony is required to determine whether the drug manufacturer's warning to the medical community is adequate because prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. *Dion v. Graduate Hosp. of Univ. of Penna., supra* at 425–426, 520 A.2d at 881. See generally: *Hamil v. Bashline,* 481 Pa. 256, 267, 392 A.2d 1280, 1285 (1978).

Instantly, appellants do not contend that SmithKline failed to give adequate warning to physicians about the dangers of hypertensive crises associated with Parnate. Rather, appellants argue that SmithKline manufactured and sold an unreasonably dangerous product when it failed to advise physicians that Parnate-induced hypertensive crises could be treated with a widely available drug named Nifedipine. In the report prepared by appellants' medical expert, Donald M. Yealy, M.D., of the University of Pittsburgh, School of Medicine, it is stated that "offering oral or sublingual Nifedipine may have prevented the intracranial hemorrhage associated with the MAOI-induced hypertensive crisis suffered by Ada Demmler." (Plaintiffs' Supplemental Expert Report—Antidote, September 21, 1994). Nifedipine, according to Dr. Yealy's report, is well known to have a fairly rapid onset of activity, and of lowering the blood pressure. This, it is asserted, would have offered Mrs. Demmler a greater chance of averting a tragic intracranial hemorrhage.

For purposes of this appeal, we resolve any doubt about the availability and benefits of Nifedipine as an antidote in appellants' favor. We also assume that Mrs. Demmler suffered a Parnate-induced hypertensive crisis. Additionally, the evidence was that SmithKline did not warn physicians about the availability of Nifedipine to treat complications arising from the use of Parnate. Nevertheless, we must affirm the judgment in favor of SmithKline, for appellants have failed to establish that SmithKline's product was defective. Appellants have also failed to establish that the alleged defect caused Mrs. Demmler's injuries.

Based on our review of the record, we agree with the conclusion of the trial court that appellants have failed to present sufficient evidence on the record from which a reasonable jury could infer that appellee manufactured and sold a defective product. SmithKline specifically warned of the hazard of hypertensive crises associated with Parnate and suffered by Mrs. Demmler. See: Restatement (Second) of Torts, § 402A, Comment j; Restatement (Second) of Torts, § 388 (discussing duty to warn of hazards). The evidence was that SmithKline provided package inserts and product descriptions which warn physicians that Parnate is "a potent agent with the capability of producing serious side effects.... The most important reaction associated with Parnate (tranylcypromine sulfate, SK & F) is the occurrence of hypertensive crises which have sometimes been fatal.... If a hypertensive crisis occurs, Parnate [ ] should be discontinued and therapy to lower blood pressure should be instituted immediately.... On the basis of present evidence, phentolamine (available as 'Regitine') is recommended." Moreover, the non-obvious nature of appellants' antidote theory required a showing by expert testimony that SmithKline's warning to the medical community was inadequate. *Dion v. Graduate Hosp. of Univ. of Penna., supra.* In Dr. Yealy's opinion, "Smith[K]line should have been aware of the information [regarding Nifedipine] and could have chosen to use [it].... [T]his information could have been disseminated in a variety of formats, including the *Physicians Desk Reference* or other direct mailings to physicians." (Plaintiffs' Supplemental Expert Report—Antidote, Sept. 21, 1994) (emphasis supplied). Dr. Yealy's expert opinion, even if wholly credited, however, does not evidence that SmithKline's instructions or warnings to the medical community concerning Parnate and its side effects were inadequate. Dr. Yealy merely points out that SmithKline had the opportunity, but not the obligation, to include helpful information about Nifedipine when warning physicians about Parnate. Accordingly, the record supports no basis upon which a reasonable jury could impose liability on SmithKline based on the alleged defect in the Parnate warning supplied to prescribing doctors.

A second and independent reason for affirming the summary judgment granted in favor of SmithKline is that the plaintiff/appellants failed to establish any causal link between the alleged defect and Mrs. Demmler's injury. The law requires that "there must be some reasonable connection between the act or omission of the defendant and the injury suffered by the plaintiff." *Burnside v. Abbott Laboratories, supra* at 274, 505 A.2d at 978. "In the duty to warn context, assuming that plaintiffs have established both duty and a failure to warn, plaintiffs must further establish proximate causation by showing that had defendant issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided." *Mazur v. Merck & Co., Inc., supra* at 262. See also: *Staymates v. ITT Holub Indus.*, 364 Pa.Super. 37, 51, 527 A.2d 140, 147 (1987) (evidence must support a reasonable inference that that existence of an adequate warning may have prevented the injury). In the event that a warning is inadequate, proximate cause is not presumed. *Mazur v. Merck & Co., Inc., supra; Staymates v. ITT Holub Indus., supra.* Accord: *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir.1992); *Windham v. Wyeth Laboratories, supra* at 613. "[T]o create a jury question, the evidence introduced must be of sufficient weight to establish ... some reasonable likelihood that an adequate warning would have prevented the plaintiff from receiving the drug." *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir.1992). See also: *Plummer v. Lederle Laboratories*, 819 F.2d 349, 358–359 (2nd Cir.1987); *Stanback v. Parke, Davis and Co.*, 657 F.2d 642, 645–646 (4th Cir.1981). Absent proof that a more thorough or more explicit warning would have prevented Mrs. Demmler's use of Parnate, appellants cannot establish that SmithKline's alleged failure to warn was the proximate cause of Mrs. Demmler's injuries.

The uncontradicted deposition testimony of Dr. Christopher Erstling was that he prescribed Parnate to Mrs. Demmler based upon his years of clinical experience and his review of medical literature, rather than any information supplied by SmithKline. Even if information about Nifedipine was re-

quired to make Parnate safe for use, the record is devoid of any evidence that a different warning would have altered Mrs. Demmler's use of Parnate in accordance with Dr. Erstling's instructions. Therefore, we hold that a reasonable jury could not find that the alleged failure to warn was the proximate cause of appellants' injuries.

In this strict liability action, appellants assert that SmithKline, the manufacturer and seller of the prescription drug Parnate, is liable to appellants for injuries sustained when wife-appellant suffered a Parnate-induced hypertensive crisis. It is undisputed that SmithKline specifically warned prescribing physicians about the hazard of hypertensive crises associated with the use of Parnate. Appellants contend, nevertheless, that SmithKline's product was defective because it failed to warn physicians that Nifedipine was an effective antidote to a hypertensive crisis. We hold that SmithKline's product was not defective, and additionally, that appellants have failed to prove prima facie that there was a proximate causation between the alleged defect and appellants' injuries. Liability will not be imposed upon a drug manufacturer " 'for unfortunate consequences attending [use of a prescription drug] merely because he has undertaken to supply the public with an apparently useful and desirable product[,] attended with a known but apparently reasonable risk.' " *Incollingo v. Ewing, supra* at 288, 282 A.2d at 220, quoting Restatement (Second) of Torts, § 402A, Comment k. See also: *Hahn v. Richter, supra* at 143, 628 A.2d at 866.

Affirmed.

DEL SOLE, J., did not participate in the consideration or decision of this appeal.