## Blase v. Allied Signal Inc.

C.P. of Dauphin County, no. 238 S 1990.

*Thomas A. Lang,* for plaintiff.
*Timothy Barnard,* for defendant Borg Warner Corp.
*Mark Lipowicz,* for defendant Ford Motor Co.
*Christine O. Boyd,* for defendant General Motors Corp.
*Louis Bell,* for defendant Chrysler Corp.
*Sharon H. Powell,* for defendant PA Brake Bonding Corp.
*Peter J. Neeson,* for defendant Allied Signal Inc.

CLARK, *J.,* September 30, 1996—This court has been called upon to review defendants' motion for summary judgment and plaintiff's motion for reconsideration of the court's order dated September 17, 1996. After careful consideration of the arguments presented, the motion for reconsideration is denied. As a consequence thereof, the motion for summary judgment is granted.

The above-captioned action was filed by Mildred M. Blase as a result of the death of her husband, Harold C. Blase. At all times relevant hereto, Mr. Blase was employed as an auto mechanic at Bell of Pennsylvania. During his period of employment, he was required to work with products manufactured by defendants which allegedly contained asbestos. Plaintiff contends that this exposure caused Mr. Blase to develop lung cancer and ultimately expire.

At trial, plaintiff intended to introduce the proposed testimony of Jerrold L. Abraham M.D., to establish a causal connection between Mr. Blase's exposure to asbestos and his development of lung cancer. In response thereto, defendants filed a motion to preclude such proposed testimony on the basis that Dr. Abraham failed to conclude in his expert report that a causal connection existed. On September 6, 1996, the court heard oral arguments on the matter. A final order was entered on September 17, 1996 in which defendants' motion was granted, thereby precluding Dr. Abraham from rendering expert testimony regarding causation at trial. In response to said order, plaintiff filed a motion for reconsideration, while defendants filed a motion for summary judgment. On September 19, 1996, the court entertained oral arguments on the motions.

In promoting her position, plaintiff contended that Dr. Abraham's proposed testimony should not be pre-

cluded from being introduced at trial since it falls within the fair scope of his expert report. *Hickman v. Fruehauf Corp.*, 386 Pa. Super. 455, 563 A.2d 155 (1989). In determining whether an expert's trial testimony falls within the fair scope of his report, the court is to determine: "whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response or which would mislead the adversary as to the nature of the appropriate response. . . .

"'Fair scope' contemplates a reasonable explanation and even an enlargement of the expert's written words.

"An expert's report is adequate to allow examination on a particular issue at trial when the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." (citations omitted) *Id.* at 459, 563 A.2d at 157.

The court considered plaintiff's argument and reaffirmed its earlier ruling that Dr. Abraham cannot offer an expert opinion regarding causation at trial. An examination of Dr. Abraham's report, in its entirety, indicates that he failed to discuss causation in any terminology whatsoever. Therefore, the discrepancy between his report and proposed testimony at trial prevents defendants from preparing a meaningful response. A finding that asbestos exposure is linked to an increased risk of lung cancer is not sufficient to place the defendants on notice of a theory regarding causation. Throughout these proceedings, plaintiff has consistently referred to the "proposed" testimony of Dr. Abraham and has requested that the court reserve its ruling until it hears the testimony presented at trial. However, if

plaintiff is not certain as to the exact nature of the testimony, then defendants cannot be expected to have knowledge of its contents and are thereby precluded from preparing an adequate response. Finally, even if Dr. Abraham were permitted to reasonably explain or enlarge his written words, he could not offer causation testimony and still remain within the four corners of his report.

It is important to note that defendants presented the court with a copy of an expert report issued by Dr. Abraham in a similar case. In this report, Dr. Abraham indicated that he reviewed the pathology materials and medical records of the subject individual which were provided by plaintiff's counsel. Based on his analysis, he stated that he could conclude to a "reasonable degree of medical certainty" that the plaintiff was properly diagnosed with malignant mesothelioma and "that there was ample evidence of asbestos exposure by history, as well as radiologic markers of asbestos exposure." Furthermore, he indicated that "[t]hese findings are sufficient to conclude that [plaintiff's] occupational asbestos exposure was the *cause* of his malignant mesothelioma and death." (emphasis added) Examining the language used by Dr. Abraham in this particular report, it is clear that he was well aware of the information which needed to be contained in an expert report to aid plaintiff in presenting her case. For whatever reasons, he failed to provide the necessary facts and conclusions regarding the condition of Mr. Blase required to sustain plaintiff's burden of proof.

Based on the foregoing, Dr. Abraham shall not be permitted to expand the theories contained in his report and offer testimony establishing a causative link be-

tween Mr. Blase's exposure to asbestos and his eventual development of lung cancer.

Since Dr. Abraham's expert testimony has been precluded at trial, the court went on to consider whether plaintiff could produce a medical expert to meet its burden and demonstrate that Mr. Blase's asbestos exposure was a substantial contributing factor in causing his lung cancer. *Rafter v. Raymark Industries Inc.,* 429 Pa. Super. 360, 632 A.2d 897 (1993). In an attempt to still prove her case, plaintiff offered the testimony of Mr. Blase's treating physician, John C. Wallendjack M.D. On August 16, 1989, in preparation of a workers' compensation hearing, the deposition testimony of Dr. Wallendjack was taken. In response to a hypothetical question, Dr. Wallendjack testified to a reasonable degree of medical certainty that Mr. Blase's asbestos exposure was "a substantial contributing cause" to the development of his "lung malignancy." (Deposition transcript of John C. Wallendjack M.D., p. 33, lls. 7-10.) While an expert's opinion may be based on a hypothetical, the facts contained in that hypothetical must provide a sufficient basis for the conclusions ultimately given by the expert. *Hussey v. May Department Stores Inc.,* 238 Pa. Super. 431, 357 A.2d 635 (1976). If an expert's opinion is based on mere conjecture, it is considered incompetent and may not be admitted into evidence. An opinion may be found conjectural because it does not have an adequate basis in fact. *Id.* at 435-36, 357 A.2d at 638.

After an extensive review of the facts contained in the hypothetical, the court has concluded that these facts do not provide sufficient grounds to support Dr. Wallendjack's conclusions regarding causation. The

question is quite detailed in explaining the nature of Mr. Blase's work and the ways in which he was exposed to asbestos. It makes mention of his smoking history and sets forth in chronological order his medical history, including hospital visits, near the time of his death. The question concludes with a finding that the cause of Mr. Blase's death was listed as metastatic carcinoma of the lung.

As indicated by the above, plaintiff's counsel failed to include facts which *link* the asbestos exposure to the resulting lung cancer. Plaintiff has contended that Mr. Blase was exposed to chrysotile fibers and that these fibers caused his lung cancer. However, in the hypothetical, there was no reference to the specific type of asbestos fibers contained in the products handled by Mr. Blase, nor was there reference to the effects of such fibers. Furthermore, there was no mention of pathology reports to substantiate the existence of chrysotile fibers in Mr. Blase's lung and the process through which these fibers can cause cancer. Without a sufficient factual basis set forth in the hypothetical, Dr. Wallendjack shall not be permitted to render an expert opinion as to the cause of Mr. Blase's lung cancer.

Aside from the existence of the hypothetical, Dr. Wallendjack still would not be able to render an expert opinion concerning causation. His deposition testimony, taken as a whole, establishes that he had no independent basis upon which he could render such a conclusion. His own review of Mr. Blase's medical history was limited to the medical records compiled during his treatment of Mr. Blase which began in 1987, the hospital records from the time Mr. Blase had his lung removed until his time of death, and the history obtained directly from Mr. Blase. The medical records possessed by Mr. Blase's previous family physician were never provided

to Dr. Wallendjack when he resumed the care of Mr. Blase. Dr. Wallendjack specifically expressed that he did not view the dispensary records of Bell comprised throughout Mr. Blase's entire career. Nor did he see the pulmonary function studies which were performed on Mr. Blase in 1982 or 1984. (Deposition transcript, p. 42.) Additionally, he did not view the chest x-rays taken in 1982 and 1984. (Deposition transcript, p. 42.) Nor did he review the tissue samples or slides that were taken when Mr. Blase had his lung removed. However, he did admit to reading the pathology report and was aware that the pathologist was not able to detect any asbestos fibers contained in the biopsy specimens. (Deposition transcript, pp. 42-45.) When questioned specifically about Mr. Blase's exposure to asbestos, Dr. Wallendjack indicated that he was unable to identify the specific type of fiber to which Mr. Blase was exposed. He further stated that he had never visited Mr. Blase's place of employment and had never seen any reports regarding its air sampling. (Deposition testimony, pp. 43-45.) He testified that he did not have any information either quantifying or qualifying the asbestos exposure, beyond that relayed by Mr. Blase. (Deposition transcript, pp. 46-47.) Finally, he indicated that he had no information concerning investigations involving the incidence of lung cancer in the auto mechanic industry and therefore, could not conclude that auto mechanics have an increased risk of developing lung cancer than that of the normal population. (Deposition transcript, pp. 36-37.)

During the cross-examination of Dr. Wallendjack's credentials, counsel for defendant, Bell of Pennsylvania, established the following facts relating to the physician's qualifications. Dr. Wallendjack had done no independent research in the area of etiology of lung cancer or the

effects of asbestos on health. He had never been trained in the analysis of pathology specimens. Nor had he experience in the area of electron microscopy or other methods of detecting asbestos fibers in various samples of body tissue. (Deposition transcript, pp. 8-9.)

Based on the foregoing, Dr. Wallendjack is not qualified to render a medical opinion linking Mr. Blase's asbestos exposure to his lung cancer. There exists no independent factual basis to support this conclusion. In the event that plaintiff had presented Dr. Wallendjack with the aforementioned materials after his deposition testimony, he may have been able to issue a supplemental report and testify as to causation depending upon his conclusions. However, this course of action was not followed in this case. Therefore, plaintiff is left without a medical expert to establish causation. Under these circumstances, defendants' motion for summary judgment must be reviewed.

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). When considering whether summary judgment is proper, the record must be examined in a light most favorable to the nonmoving party. *Demmler v. SmithKline Beecham Corp.,* 448 Pa. Super. 425, 671 A.2d 1151 (1996). "If there are no material issues of fact in dispute, and plaintiff has failed to allege facts sufficient to make out a prima facie case, as a matter of law, then summary judgment may be granted properly." *Hunger v. Grand Central Sanitation,* 447 Pa. Super. 575, 578, 670 A.2d 173, 174 (1996), citing *Dudley v. USX Corp.,* 414 Pa. Super. 160, 169-70, 606 A.2d 916, 920 (1992).

As plaintiff is asserting a products liability action, she has the burden to prove that Mr. Blase's injuries were caused by a particular product manufactured by the defendants. *Eckenrod v. GAF Corp.,* 375 Pa. Super. 187, 544 A.2d 50 (1988), *allocatur denied,* 520 Pa. 605, 553 A.2d 968 (1988). As previously indicated, when establishing causation, plaintiff must show that asbestos exposure was a substantial contributing factor to the resulting injury. *Rafter, supra.* In matters where the ultimate determination of causation is beyond the knowledge or expertise of the average layperson, expert testimony is necessary to aid the jury in making its final decisions. *Hamil v. Bashline,* 481 Pa. 256, 266, 392 A.2d 1280, 1285 (1978). Generally, due to the complexities of the human body, questions concerning the cause of an injury are beyond the knowledge of the average layperson. *Id.* These complexities coupled with the intricacies of asbestos exposure require the presentation of expert medical testimony.

In cases where causation must be proven through expert testimony, "the expert must testify with 'reasonable certainty' that in his 'professional opinion, the result in question did come from the cause alleged.' " *Kravinsky v. Glover,* 263 Pa. Super. 8, 21, 396 A.2d 1349, 1356 (1979). This rule is necessary because: "[t]he opinion of an . . . expert is evidence. If the fact-finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact-finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct. . . . [I]t is the intent of our law that if plaintiff's . . . expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment there is nothing on the record with which a [fact-finder] can make a decision with sufficient certainty so as to make a legal judgment." *Id.,* citing *McMa-*

*hon v. Young,* 442 Pa. 484, 486, 276 A.2d 534, 535 (1971). See also, *Pirches v. General Accident Insurance Co.,* 354 Pa. Super. 303, 511 A.2d 1349 (1986).

In not producing expert medical testimony to establish the necessary causative link in this case, plaintiff has failed to meet her burden of proof. Since there are no material facts in dispute and plaintiff failed to make out a prima facie case, as a matter of law, summary judgment must be granted in favor of defendants.

In consideration thereof, the court shall deny plaintiff's request to retract its statement from its memorandum issued on September 17, 1996 concerning the effect Dr. Abraham's absence will have in plaintiff's case. Furthermore, the issue of whether Dr. Abraham can testify as a fact witness need not be addressed as summary judgment has been granted.

Based on the foregoing, the following is entered:

## ORDER

And now, September 30, 1996, in accordance with the attached opinion, plaintiff's motion for reconsideration is denied. However, defendants' motion for summary judgment is granted.