J-S21037-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH LANDMAN (DECEASED)<br>AND<br>MARIE LANDMAN | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| Appellee | |
| v. | |
| CALVARY FULL GOSPEL CHURCH | |
| Appellant | No. 2598 EDA 2013 |

Appeal from the Order August 1, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No(s): No. 0405026

BEFORE:  SHOGAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 03, 2014**

Joseph Landman (Deceased)[1] and Marie Landman (Landmans) appeal

from the order entered August 1, 2013, in the Court of Common Pleas of

Bucks County, purporting to grant a directed verdict in favor of Calvary Full

---

[1] It does not appear that the Estate of Joseph Landman was ever substituted as plaintiff for Joseph Landman (Deceased).  Additionally, it does not appear that a suggestion of death for Joseph Landman was ever filed.  In its Pa.R.A.P. 1925(a) Opinion, the trial judge simply notes that Joseph Landman died, unrelated to this lawsuit, sometime after the complaint was filed.  The August 1, 2013, notes of testimony is the first time the caption of this matter reflects Joseph Landman as deceased.  Assuming that the Landmans' property was owned jointly with right of survivorship, Marie Landman would be the actual plaintiff, but that fact is not immediately discernable in the certified record.  *See* Pa.R.C.P. Rules 2352 (Substitution of Successor), 2355 (Notice of Death of a Party.  Substitution of Personal Representative).

Gospel Church (Calvary), thereby dismissing the Landmans' cause of action.[2] The motion for directed verdict was granted immediately after the trial court granted Calvary's motion to preclude the testimony of the Landmans' proposed expert. In this timely appeal, the Landmans argue the trial court erred in granting a directed verdict before the case had been called to trial and before they were able to produce any testimony, that the trial court erred in granting the motion to dismiss in the absence of notice to the Landmans, and erred in determining the cause of action required expert testimony. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm in part, reverse in part, and remand for further proceedings.

On August 4, 2004, the Landmans initiated this lawsuit against Calvary, claiming that Calvary had hired certain contractors to perform landscaping work on the church property. The Landmans' property adjoins the property owned by Calvary. The certified record demonstrates that the Landmans' property is slightly elevated in comparison to Calvary's and therefore there is a hill between the church and the Landmans' home. A survey included in the certified record shows that Calvary owns the hill. The Landmans claimed that work was negligently performed causing various

---

[2] Calvary filed joinder complaints against Weaver Construction and W.K. Frame & Sons. Accordingly, dismissing the claims against Calvary would necessarily terminate Calvary's claims against the additional defendants.

damage to the Landmans' property, which abuts the church property. The complaint alleges:

A. [Landmans'] property has been cut away and now lost.

B. [Landmans'] fence has been severely undermined and is a danger and in danger of imminent collapse.

C. [Calvary] caused water run-off to be changed, and caused an undermining of [Landmans'] property, causing severe damage to sections of [Landmans'] property.

D. [Calvary] has caused an undermining of [Landmans'] concrete slab, which has been caused to crack and is in imminent danger of collapsing and is unusable.

E. The removal of the shrubbery and change of the land has caused extensive run-off and severe erosion to the protected area between [Landmans'] and [Calvary's] property, which continues to cause severe erosion and damage.

F. [Calvary] has encroached on the property owned by [Landmans].

Complaint, 8/4/2004, at ¶10 (A)-(F).

The Landmans further itemized their alleged damages:

1. Survey cost for boundary markers removed by [Calvary] in the amount of Seven Hundred Fifty-two Dollars ($752.00).

2. Engineering and placement of retainer wall, removal of severely cracked and damaged concrete slab, repair of building cracks in the amount of Twenty-seven Thousand Five Hundred Dollars ($27,500.00).

3. Fence repair or removal and replacement of seventeen sections and eighteen stabilizing sets in the amount of Six Thousand Five Hundred Dollars ($6,500.00).

4. Replacement of lost ground and erosion caused by excavation in the amount of Forty Thousand Dollars ($40,000.00)

5. Veneer stone on home cracked and damaged in the amount of Three Thousand Seven Hundred Dollars ($3,700.00).

6. Repair and replacement of destroyed vegetation and trees on the hillside to return to original slope to prevent further damage and erosion in the amount of One Hundred Thousand Dollars ($100,000.00).

Complaint, at ¶ 11 (1)-(6).

Relevant to this appeal, a jury trial was scheduled to begin August 1, 2013. Prior to that date, on June 26, 2013, a pre-trial order was issued, requiring the parties to file a pre-trial memorandum listing all witnesses. This memo was to be filed one week prior to trial. Here, the Landmans filed their pre-trial memo on July 29, 2013, four days late. The pre-trial memorandum listed Mat Lydon as a witness. The certified record reflects that on July 29, 2013, counsel for Calvary notified Landmans' counsel that Mat Lydon had never been identified prior to receipt of the pre-trial memorandum and consequently, a motion *in limine* would be filed seeking to preclude his testimony. The motion was filed on July 31, 2013.

A pre-trial conference was scheduled for the morning of August 1, 2013, prior to jury selection. At that time, the issue of Mat Lydon was raised. The Landmans identified Lydon as an expert witness, but voluntarily withdrew him as a witness. Immediately following that, Calvary made an oral motion for nonsuit or directed verdict, arguing the Landmans needed expert testimony to provide the causal link between the landscaping activities undertaken at Calvary and the erosion, run-off, undermining, and physical damage claims made by the Landmans. The trial court then asked

the Landmans for a specific offer of proof as to how they meant to causally link the defendants' activities with the damages claimed. The arguments presented by the Landmans were of a *post hoc ergo propter hoc*[3] nature. Essentially, the Landmans argued that they did not notice the cracking problems in the concrete, walls and fences until after the landscaping began, therefore, the damage must have been caused by the landscaping activities. Similarly, they could not specifically link erosion and water run-off problems to any negligent action taken by Calvary. The trial court noted that a variety of elements have an effect on the structural integrity of fences, concrete slabs and building walls. Therefore, the Landmans' proposed evidence based upon timing was insufficient; it would require an expert to determine what caused the structural failings.

Similarly, the Landmans' property was above Calvary's property; therefore, water would always tend to run-off the Landmans' property to Calvary's. However, how and why such erosion and/or run-off changed was not a matter for lay interpretation. Rather, it required an expert to assess the causal factors.

Based upon the Landmans' offer of proof, the trial court determined the Landmans could not present a *prima facie* case, and there was no

---

[3] Literally, "After this, therefore because of this." Otherwise put, it followed, therefore it was caused by.

purpose in proceeding with the trial. Accordingly, the trial court dismissed the action.

The Landmans' first claim is that they were denied their due process rights when the trial court granted a motion for directed verdict prior to the introduction of evidence. The Landmans are correct in noting that the Rules of Civil Procedure allow for the entry of a directed verdict "at the close of all evidence." *See* Pa.R.C.P. 226(b). Similarly, the other method of terminating a case during trial, nonsuit, is allowed "at the close of the plaintiff's case." *See* Pa.R.C.P. 230.1(a) (1). Because the trial court has stated it granted a directed verdict, under that theory, the Landmans should have been allowed to present their evidence.

However, we believe the trial court misnamed its ruling. The dismissal was granted prior to trial and the introduction of testimony and evidence. There are two methods by which that is accomplished; a party may seek either a judgment on the pleadings or summary judgment.[4] Since judgment

_____

[4] "A trial court's order dismissing a case prior to trial is properly characterized as either a summary judgment or a judgment on the pleadings." *Demmler v. SmithKline Beecham Corp.*, 671 A.2d 1151, 1153 (Pa. Super. 1996). In *Demmler*, SmithKline filed a misnamed motion to dismiss; our Court considered the motion for what it was, a motion for summary judgment. Similarly, we will view the instant motion as requesting summary judgment.

on the pleadings was not applicable, we must examine whether the order was an appropriate grant of summary judgment.[5]

Initially, the Landmans argue that the trial court erred in granting the motion because Calvary had not followed the proper procedural rules, thereby denying them the right of notice and the right to be heard. "Generally, it is improper for a trial court to entertain a motion for summary judgment filed on the morning of trial." *DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 366 (Pa. Super. 2003). However, we are not persuaded that the general rule applies to the instant factual circumstances.

The Landmans did not notify Calvary of their intent to present Mat Lydon as an expert witness until they filed their pre-trial memorandum on July 29, 2013, four days after it was due and only three days prior to trial. Calvary immediately informed the Landmans they would object, and on July 31, 2013, filed a written motion seeking preclusion of Lydon as a witness. It was not until the next day, at the pre-trial conference, that the issue was resolved, confirming that the Landmans did not have expert testimony and would be unable to prove certain aspects of their case.

Although entertaining a motion for summary judgment on the morning of trial is disapproved of, where the trial court has an extensive record and

---

[5] Because the Landman's due process claim was based upon the trial court having granted a directed verdict, and we have determined the trial court granted summary judgment, the due process claim is irrelevant to the disposition of this appeal.

the non-moving party has an opportunity to respond fully, the trial court may hear the motion. *See Kramer v. Dunn*, 749 A.2d 984 (Pa. Super. 2000). Here, as noted, because the Landmans delayed in filing their pre-trial memorandum, the issue did not arise until the morning of trial. Calvary's motion was, therefore, not designed to delay trial. Further, the trial judge had the full record available and the Landmans were given the opportunity to present an offer of proof that needed only demonstrate a *prima facie* case that the claims did not require expert testimony. Taking all of these factors into account, we find no error in the trial court entertaining the motion for summary judgment on the morning of trial.

The Landmans' final claim is that the trial court erred substantively in granting the motion for summary judgment.

We begin by noting our standard of review for a motion granting summary judgment.

> An order granting summary judgment is appropriate when a review of all the interrogatories, affidavits and depositions of record indicates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Buckno v. Penn Linen & Uniform Service Inc.*, 428 Pa.Super. 563, 565, 631 A.2d 674, 675 (1993). However, "[a]n entry of summary judgment may be granted only in cases where the right is clear and free of doubt." *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). When considering whether summary judgment is proper, the record must be examined in the light most favorable to the non-moving party, with all doubts resolved against the moving party.
>
> *Denlinger, Inc. v. Dendler*, 415 Pa.Super. 164, 170, 608 A.2d 1061, 1064 (1992).

- 8 -

***Demmler v. SmithKline Beecham Corp***, *supra*, 671 A.2d at 1153.

Here, the complaint and pre-trial memorandum allege that as a result of landscaping/construction work performed at the direction of Calvary, the Landmans' adjoining property suffered erosion, damage to a fence, damage to a concrete slab, and damage to their home. The trial court found that such damages claimed were not within the general knowledge of laypersons and therefore an expert was required to explain the mechanism of such damage. Our review of the certified records leads us to agree with the trial court. The record provides no causative link between the landscaping/construction activity and the claims of erosion, water run-off, undermining of fences, concrete slab and home. Given the myriad of factors that can provoke such outcomes, we agree that an expert is required to explain causation. In addition, we note the record contains expert opinion provided by Calvary that purports to explain the mechanisms that caused the Landmans' complaints.[6]

We have previously acknowledged the *post hoc* nature of the Landmans' claims and proposed evidence and following review of the certified record and viewing the evidence in the light most favorable to the

---

[6] We are aware that we must view the evidence in the light most favorable to the Landmans as non-moving party. We note Calvary's expert report only to acknowledge the complexity of causation. We are not giving credit to the conclusions found in Calvary's expert report.

Landmans, we discern no error in the trial court's determination that certain of the Landmans' claims required expert testimony. To that extent, we affirm the grant of summary judgment to those claims involving erosion, run-off, the necessity of replanting the hill to prevent erosion and run-off, and damage to the physical structures of the home, fence and concrete slab.

However, we find the trial court did err in concluding that all of the Landmans' claims required expert testimony. There are two claims that do not and which can only be resolved by determination of fact and credibility determinations. The Landmans claimed that Calvary caused the survey posts to be removed, which required the Landmans to hire a surveyor and replace the posts. No expert testimony is required to prove this claim. Similarly, the Landmans have claimed that in the course of landscaping/construction, certain portions of their property were cut away. This claim can be interpreted to mean that in performing their work, the contractors improperly encroached upon the Landmans' property.[7] This claim does not require expert testimony to resolve. Accordingly, the claims regarding the removal of the boundary markers and the improper removal of land (not caused by erosion or run-off) must go forward.

_____

[7] As best as we can make out, this claim involves the hill between Calvary and the Landmans' home. Although the survey included in the official record indicates this hill belongs to Calvary, because we cannot determine exactly what portion of the Landmans' property was allegedly cut away, and the defense never sought clarification of the complaint, summary judgment is inappropriate.

Order granting summary judgment is affirmed in part, and reversed in part. This matter is remanded to the trial court for trial on the limited issues detailed herein. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/2014